EMMA F. STRINGFELLOW ET AL. v. JOHN F. G. EARLY.

Decided March 17, 1897.

**1.  Will—Agreement not to Probate.**

Before probate of a will the parties in interest may, to avoid controversy, agree
that it be not probated and that they take the property according to their interest
as heirs at law; such agreement is not against public policy.

**2.  Same—Minors—Married Women—Beneficial Agreement.**

The agreement was not void because some of the parties were minors and some
married women acting by an agent.  Being for their benefit it was only voidable at
their election and their personal privilege could not be taken advantage of by
others.

**3.  Same—Procedure.**

Such agreement may be enforced in a proceeding to probate the will; it is not nec-
essary that the will be admitted to probate before its provisions can be annulled.

**4.  Same—Pleading—Demurrer.**

A reply by the proponent of the will that such agreement was not mutual but
was obtained by coercion, presents an issue of fact to be tried, but does not justify
the sustaining of exceptions to the plea of contestants setting up the agreement.

APPEAL from the District Court of Caldwell County.  Tried below be-
fore Hon. H. TEICHMUELLER.

*A. B. Storey* and *E. B. Coopwood,* for appellants.—The contract
relied upon by appellants was valid and binding upon appellee, and under
its provisions and the facts alleged appellee was estopped to deny its
validity or ask the probate of said will.  Herman on Estoppel, secs.
210-212; Jarman on Wills, 415; Phillips v. Phillips, 8 Watts (Pa.),
195; 10 Am. & Eng. Ency., Law, 637-659-660; Addison on Contracts,
secs. 14, 17, 18, 19.

*Nix & Baylor,* for appellee.—There was no error in the judgment of
the court of Oct. 10th, 1895, in sustaining proponent's exceptions to
that part of appellant's protest opposing the probate of the will of Dr.
J. F. Early on the grounds of the alleged agreement not to probate
same.  1st, because a contract to destroy a will is against public policy
and void.  2d, because the contract set up was not made by the minors,
nor anyone authorized to act for them, nor by Mrs. Bruce Salter nor
anyone authorized to act for her and because said contract if made was

in part with minors, and the court could not decree specific performance of the contracts of infants; but if said contract was valid and binding then, the protestants could not set it up in this proceeding and have the same adjudicated because the sole question to be determined by the court in proceedings of this character is, will or no will. Lawson on Contracts, secs. 130, 472.

The proceeding to annul the will in this case attempted to be injected into the proceeding to probate it, is required by law to be commenced and conducted as a separate and distinct proceeding after the will has been probated. Sayles' Civ. Stats., arts. 1838, 1839, 1840; Prather v. McClelland, 13 S. W. Rep, 543; Black, Judgments, sec. 635.

. COLLARD, Associate Justice.—This appeal is from the judgment of the District Court of Caldwell County in a proceeding that originated in the Probate Court of the county in the matter of the probate of the will of Dr. J. F. Early, deceased.

John F. G. Early, the appellee, filed his petition to probate the will, December 24, 1894, alleging that he was the son of deceased and the principal legatee under the will and had been named as executor.

February 18, 1895, Mrs. E. F. Stringfellow (joined by her husband, M. R. Stringfellow), Mrs. Bruce Salter (joined by her husband, R. R. Salter), R. E. Stringfellow and Emma M. Stringfellow (the last two being minors, without legal guardians of their estates, appearing by their father, the said M. R. Stringfellow), filed a protest against the probate of the will, the proponent and protestants E. F. Stringfellow, Bruce Salter, R. E. Stringfellow and Emma M. Stringfellow being the only heirs at law of deceased. The protest sets up that after the will was opened, read and discussed after the death of deceased the protestants expressed their dissatisfaction with its provisions, on August 10, 1894, and announced their intention to contest the probate of the same upon the grounds of want of testamentary capacity in the testator at the time of making the will and of undue influence upon him by the proponent. It was alleged that the protestants made known to the proponent at the same time that they would insist upon the payment to them of certain subsisting bona fide debts due them by the deceased, then enumerated, the payment of which the proponent then declared would consume the entire estate. It was further alleged that at the same time, during the conference, proponent claimed to be the owner of a certain note signed by K. H. Thornton and others, payable to deceased, upon which $200 was still due as principal, besides interest, which note, not endorsed, was among the papers of deceased, which ownership was denied by protestants, they claiming that it was the property of the estate. It was also alleged that proponent asserted claim for services rendered the deceased, which protestants refused to recognize, because no services had been rendered to deceased, but if they had been they were offset by board, lodging and clothing by deceased furnished proponent; that there were other controversies as to the rights of the parties in and to the

estate; that for the purpose of settling all matters in dispute in relation to the distribution of the estate between them, of compromising their differences, of preventing litigation and avoiding family trouble and disputes, all the parties—proponent and protestants—mutually agreed among themselves that the will should not be probated and that the estate should be divided equally among them according to their interest as heirs at law, that John F. G. Early should take one-third of the estate, that Mrs. Bruce Salter, R. E. Stringfellow and Emma M. Stringfellow, heirs of Mrs. Texie E. Stringfellow, should take one-third thereof jointly, and that Mrs. Emma F. Stringfellow should take one-third thereof, after the payment of all just claims against the estate, including burial expenses and expenses of placing a monument over the grave of deceased; and the parties further agreed to relinquish, and did relinquish, to said estate before partition and to each other all claims and demands for debt they or either of them had against the estate, and agreed to recognize, and did recognize, and allow the claim of proponent, John F. G. Early, to the note of K. H. Thornton, and surrendered as heirs at law to him all their claim to the note; that it was further agreed by all the parties interested that M. R. Stringfellow take possession of and collect all the notes and claims due the estate, without charge to the estate for his services, and keep the proceeds in the First National Bank of Lockhart for partition under the terms of the agreement; that upon the faith of the agreement protestants have permitted proponent to take possession of said $200 note of Thornton, collect the same and appropriate the proceeds thereof to his own use; and that the other evidences of debt due the estate were placed in the hands of M. R. Stringfellow for collection and partition under the terms of the agreement and he is collecting the same as rapidly as he can, keeping the proceeds as collected on deposit in the bank named, and after payment of all debts of the estate has paid to proponent his proportion of the same, according to the contract, and the same has been accepted by him as in part satisfaction of his distributive share of the estate under the agreement. It was also averred that in making the agreement R. E. Stringfellow and Emma M. Stringfellow were assisted and represented by their father, acting as their next friend, and that the arrangement and agreement is beneficial to the interests of the minors; that Mrs. Bruce Salter, while not personally present, was represented by her father, M. R. Stringfellow, acting as her next friend, "and she and her husband here now ratify and confirm his said acts." Wherefore, protestants say that the proponent, John F. G. Early, is estopped and precluded from probating the will; that there is no necessity for administration, the debts of the estate having been paid, and they ask that the probate of the will be denied. Protestants also aver that the will ought not to be probated, because it was revoked by the testator in his lifetime by obliterating it, and because, since the demise of the testator, for the purpose of concealing the time of its execution, the proponent has defaced and mutilated the will by erasing the date of its execution. Protestants then set up the mental

incapacity of deceased to make a will at the time of its execution and the undue influence exerted by the proponent, the son of deceased, setting out the facts, showing mental incapacity and undue influence. They also contest the right of proponent to the executorship, stating the grounds of objection.

Proponent, on February 21, 1895, replied to the contest by general demurrer and special exceptions, that the protest shows no mutuality in the agreement; that the agreement shows that some of the parties thereto were incompetent to contract, they being minors and were not represented by legal guardian or other persons authorized to contract for them; that the contract was without consideration to proponent, and is therefore void; that the estoppel pleaded does not show that any of the protestants have changed their position relative to the estate, nor lost any right secured to them by the will; that the plea of contest is vague and uncertain. He also replied by general denial of the facts alleged by the contestants, and specially alleged that if he ever signed the alleged agreement he did so under protest, without legal advice and in ignorance of the effect of the same and under coercion and threats on the part of M. R. Stringfellow, who originated and drew and procured the execution of the same; that he was overreached and defrauded, etc. He also denied other special facts alleged by contestants. He averred that he was the owner of the Thornton note and others, and that they were awarded to him in the partition of his mother's estate. He specially denied using any undue influence upon deceased, and that deceased was mentally incapacitated to make the will.

Contestants filed a supplemental contest, consisting of exceptions to the reply of proponent, and specially excepted because the facts of coercion and threats and fraud upon proponent, inducing his execution of the agreement, are not specified.

The renunciation of the probate of the will was filed in the County Court February 21, 1895, and is substantially as alleged by the contestants. It is signed by John F. G. Early, Bruce Salter, R. E. Stringfellow, Emma M. Stringfellow (by M. R. Stringfellow), and Emma F. Stringfellow (by M. R. Stringfellow).

On May 16, 1895, the cause came on for trial in the County (probate) Court, and the court found that Dr. J. F. Early, the testator, had sufficient mental capacity to make the will, but that on account of the agreement set up by the contestants it could not be probated. It was so adjudged, and the application to probate the will was denied. John F. G. Early appealed the case to the District Court.

In the District Court the proponent of the will filed a second supplemental application to probate the will, in lieu of his first supplemental application, and demurred to the protest generally and specially, because the court has no power to annul or vacate any of the provisions of the will until it has been probated; that the proceeding on the part of the contestants is an attempt to annul and set aside the will on account of a pretended agreement made by the beneficiaries before the will was

filed for probate, which can not be done; that the protest shows no reason why the will shall not be probated; that the agreement set up was only between John F. G. Early and M. R. Stringfellow; that two of the protestants were minors and two married women; that the parties were not represented in the contract by a legal guardian or other person authorized in law to make the contract in their behalf, and that the contract is void for want of mutuality. The same exception is made to the plea of estoppel as was urged in the County Court. It is also excepted that the proceeding is one to enforce specific performance of a contract by minors, which can not be done.

Other matters going to the merits are set up, which need not be noticed.

On October 10, 1895, the court acted on the demurrers to the protest and sustained them in so far as it set up an agreement between the parties not to probate the will, which part of the protest was stricken out without prejudice to the rights the agreement might secure to the parties to the property of the estate. Other issues—as the testamentary capacity of the testator at the time of the execution of the will, undue influence by the principal legatee, the proponent, etc.—were left in the case, and upon trial the will was admitted to probate and established as a valid will, but the court declined to appoint the applicant as executor or as administrator with the will annexed. The contestants have appealed.

*Opinion.*—The first assignment of error presented by appellants complains of the action of the court in sustaining exceptions to averments asking the enforcement of the agreement that the will should not be probated, and that the estate should be divided among the parties as they would be entitled as heirs at law of the deceased, the proponent of the will surrendering thereby his rights as principal legatee.

This assignment must be sustained. It cannot be seen that the agreement is contrary to public policy. Parties may make any contract with reference to their property rights that is not illegal, may adjust by compromise their differences and disputes concerning the same, and as they bind themselves so shall they be bound. It is difficult to understand why this cannot be effected by an agreement not to probate a will, or how it interferes with public policy. The power to litigate and to establish a right by appeal to the courts is as much the subject of contract as any other right in property. Such adjustments by contract are favored by the law and the courts, and are not deemed to be an unwarranted interference with the jurisdiction of the courts or against public policy. On the contrary, public policy favors them.

Appellants have cited a case in point—the case of Phillips v. Phillips, 8 Watts (Pa.), 197—in which it is held competent for devisees and legatees to bind themselves by a written or parol agreement to destroy a will before probate, and that a party to the agreement would be estopped from claiming any interest under the will. The court say:

"It can not admit of doubt that before probate the parties in interest under a will would have the right to set aside a will, and such an act would be favored, when the object was to avert a family controversy."

The agreement that the will should not be probated and that the parties would take the property as heirs at law of the deceased destroyed the legal effect of the will, and it could not thereafter have legal existence in conferring rights upon the legatees.

The contention of appellee that the agreement was by minors in part, and therefore it could not be enforced, is not correct. It does not appear but that the minors, in so far as they could legally do so, assented to and authorized Stringfellow to make the contract. The agreement was for their benefit.

The first item of the will directed a Christian burial of the testator; the second that all of his just debts be paid without delay; the third bequeathed to his son—the proponent, John F. G. Early—one thousand dollars; the fourth item bequeathed to his two children, Emma F. Stringfellow and John F. G. Early, each one-third of the remainder of the estate after satisfying previous bequests, and to the minor children of his daughter, Texie E. Stringfellow, jointly, the other remaining one-third of the estate after satisfying items one, two and three.

The agreement of the minors, being for their benefit, was not void; it was only voidable at their election, and might be affirmed by them upon reaching majority. Cummings v. Powell, 8 Texas, 90; Harris v. Musgrove, 59 Texas, 403; Searcy v. Hunter, 81 Texas, 644-646. A minor can make an agent to perform an act for his own benefit. Vogelsang v. Null, 67 Texas, 468. The privilege of avoiding his contract is the personal privilege of the infant, and it can not be taken advantage of by others. 10 Am. & Eng. Ency., Law, 637 et seq. and notes.

Appellee says that the agreement was not mutual. So far as the averments of the protest indicate, there was mutuality. They leave no suspicion that the proponent did not act voluntarily or that his free assent was not given to the agreement. He pleads coercion and threats as a fact. This makes an issue for the jury, and the court did not in ruling upon the demurrers affect his right to have the issue tried. This matter of mutuality could only relate to the question as to assent of the parties; it does not affect the question of the voidability of the agreement at the instance of the infant. These minors are now in court affirming the contract, and it is their right to do so. As to the married women who are parties to the agreement, they and their husbands are now in court affirming the agreement—ratifying it. Proponent can not in such case disaffirm it, especially since he has acted under it and accepted its benefits. It does not appear that the married women did not authorize the execution of the agreement in the first instance. It was for the benefit of their separate estate, and we do not believe in such case the adult dealing with them is in a position to defeat the terms of the agreement. We speak only of the terms of the agreement as set up in the protest.

There is no merit in the proposition that the will must be probated before the objections to its probate can be adjudicated. This is not a proceeding to annul any particular clauses in the will, and it does not come under the rule laid down in the statute as construed in the case of Prather v. McClelland, 76 Texas, 574. In the case referred to it was decided that under the statute a proceeding to annul some of the provisions of a will must be after the will is probated. Id., 584. This suit is to annul the will in its entirety by prohibiting its probate. It necessarily must be heard and tried in the proceeding to probate, and in resistance thereto.

There was error in sustaining exceptions to that part of the protest setting up an agreement of the parties that the will should not be probated, and for this error the judgment of the court must be reversed.

Other questions relate to the conclusions of the court upon the issues of sound mind of the testator and undue influence, upon which we should not at this time express an opinion, and therefore do not discuss.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*