**FORE v. McFADDEN et al. (No. 3105.)**

(Court of Civil Appeals of Texas. Texarkana. July 16, 1925. Rehearing Denied Oct. 8, 1925.)

**1. Wills ⬤⟞740(1)—Beneficiaries may agree on distribution.**

Beneficiaries under will may agree among themselves on distribution of property bequeathed to them as they see proper.

**2. Wills ⬤⟞740(3)—Threats of contest of will sufficient consideration for signing agreement for division of property by wife of testator.**

Where deceased had made two wills, and an agreement for disposition of deceased's property was entered into by the heirs and devisees, evidence that there were threats of contest if wife of deceased refused to sign *held* to show sufficient consideration for her signature.

**3. Wills ⬤⟞740(3)—Beneficiary not affected by agreement of other beneficiaries as to distribution not necessary party thereto.**

Where beneficiaries under will had entered into an agreement as to disposition of property, it was not necessary that beneficiaries who were not affected by terms of agreement should become parties thereto.

**4. Wills ⬤⟞740(3)—Agreement of heirs, acquiesced in by all, binding when original probate order thereon is affirmed, even though attorney signed for married women.**

Where deceased had left two wills, and agreement had been entered into by heirs and beneficiaries for disposition of property, agreement will not be canceled on ground that at-torneys had signed for married women, where legal effect of affirming probate order on the agreement will make it binding on all parties.

**5. Wills ⬤⟞741—Evidence held sufficient to show wife of testator understood nature and legal effect of agreement for disposition of property by heirs and devisees.**

In proceedings by wife of deceased to set aside probate order upon an agreement entered into by heirs and devisees, evidence *held* sufficient to show that she understood nature and legal effect of agreement for disposition of property.

**6. Wills ⬤⟞355—Wife of deceased estopped to have judgment of probate according to agreement set aside after joining in all proceedings with full understanding.**

Where wife of deceased had joined with other heirs and devisees in agreement for disposition of property of deceased who had left two wills in conflict with each other, and also had joined in defense against contest, evidence showing that she understood her rights under wills and under agreement, she is estopped to have judgment probating will according to agreement set aside.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Proceeding by Mrs. Etta Fore by way of answer and cross-bill against Emmett McFadden and others to have agreement for probate of will of F. M. Fore, deceased, canceled and probate order modified. From an adverse judgment, Mrs. Etta Fore appeals. Affirmed.

Dial & Brim, of Sulphur Springs, for appellant.

Clark & Clark, Neyland & Neyland, and Harrell & Starnes, all of Greenville, and C. A. Sweeton, of Houston, for appellees.

HODGES, J. F. M. Fore, whose will is the subject-matter of this controversy, died in Hunt county on May 30, 1923. His only heirs were his wife and some nephews and nieces. In July, 1921, he made a will in which he bequeathed his property to his wife, some of his relatives, and to other parties who were not related to him. In October, 1922, he executed another will, of which the following is a copy:

"State of Texas, County of Hunt.

"I, F. M. Fore of the county of Hunt and state of Texas, being of sound and disposing mind and memory and being desirous to settle my worldly affairs while I have strength to do so, do make this my last will and testament.

"1st. It is my will and desire that the one hundred and fifty acre tract of land out of the B. B. B. & C. R. R. Co. at my death shall pass to and vest in fee simple to my beloved wife, Etta Fore, and R. E. McFadden jointly and equally, neither to act without the consent of the other with respect to said land, and I hereby give, bequeath and demise unto said Etta Fore and R. E. McFadden the above described

150 acres of land to manage and control and dispose of as they jointly may wish or see proper.

"2nd. I give and bequeath to my wife, Etta Fore, and M. O. Earl jointly and equally at my death sixty-three and one-half acres out of the Tepton Denton survey, now owned by me, neither of the above named parties shall have power to act with regard to said land without the consent of the other, they to manage and control said land jointly.

"3rd. It is my will that no other action be had in the courts than to prove this will.

"In testimony whereof, I have hereto set my hand this the 4th day of October, 1922.
                                    "F. M. Fore."

In November following he executed the following codicil:

"The State of Texas, County of Hunt.

"Whereas, I, F. M. Fore, of the county of Hunt and state of Texas, having heretofore made my last will and bearing date of October 4, 1922; Now: I do, by this writing, which I hereby declare to be a codicil to my said will to be taken as a part thereof, give and bequeath to my wife, Etta Fore, all the remainder of my real estate not provided for in my last will, and I also give and bequeath to my wife, Etta Fore, one-half of all live stock that I may die seized and possessed of, the remainder to be sold and divided among my legal heirs after all debts have been paid, and lastly it is my desire that this my present codicil be annexed to and made a part of my will to all intents and purposes.

"The foregoing instrument I make and publish as a codicil to be annexed to my last will. I hereby subscribed my name this the 2nd day of November.                     F. M. Fore."

Shortly after the death of Fore his wife, the appellant in this litigation, consulted attorneys as to the legal effect of these different instruments. She was told that they contained conflicting provisions and that it was doubtful if all of them could be legally probated. Finally, after some deliberation and conference among the parties interested, the following agreement was entered into by the attorneys representing Mrs. Fore and the beneficiaries under the different wills:

"Whereas, F. M. Fore, on the 21st day of July, 1921, executed his last will and testament in the presence of J. M. Worsham, M. B. Harrell, and Guyon McKinney, witnesses;

"And whereas, thereafter on the 4th day of October, 1922, said Fore executed another document which he intended as an addition to the will above mentioned, said last named document having been signed in the presence of L. C. White and H. C. Aiken, subscribing witnesses;

"And whereas, thereafter on the 2nd day of November, 1922, F. M. Fore executed a codicil in the presence of said L. C. White and H. C. Aiken, as subscribing witnesses;

"And whereas, Mrs. Etta Fore, Emmett McFadden, Zula Bellew, Maggie Barry, Frances Boydston, Marion Boydston, Emory Brogden, and Mollie Brogden, and the principal devisees and legatees under said first named will;

"And whereas, said Etta Fore and Emmett McFadden are the principal devisees under the document dated October 4, 1922;

"And whereas, after the execution of said first will said F. M. Fore executed a deed whereby he conveyed to Etta Fore 2 tracts of land in Hunt county, Tex., one containing 216 acres and the other containing 21.8 acres, said deed being recorded in Book 273 on page 79 of the Hunt County Deed Records;

"And whereas, it is desired to settle amicably all possible questions that can arise between the parties hereto relating to the validity of said wills and said deed;

"Now, therefore, in consideration of the premises, it is agreed by and between the parties hereto as follows:

"(1) That there shall be no contest of Mrs. Etta Fore's rights under the deed above mentioned; it being conceded by the parties hereto that said deed is a valid instrument and has the effect to convey to her the property therein described.

"(2) Said Etta Fore hereby waives any and all rights under the documents above mentioned dated October 4, 1922, and the codicil dated November 2, 1922, and is not to receive anything by reason of said instruments.

"(3) Said Emmett McFadden hereby waives any and all rights under the document above mentioned dated October 4, 1922, and the codicil dated November 2, 1922, and is not to receive anything by reason of said instruments.

"(4) The instruments dated July 21, 1921, October 4, 1922, and November 2, 1922, shall be admitted to probate; the parties hereto guaranteeing to make a common and joint fight to probate the same as the last will and testament of said F. M. Fore, deceased.

"(5) Said Etta Fore and Emmett McFadden, waiving their rights under the instrument dated October 4, 1922, and the codicil thereto, dated November 2, 1922, it is agreed that the property that would have gone to them under said instrument, if valid and admitted to probate, shall be divided and disposed of in accordance with terms of the will dated July 21, 1921.

"(6) It is agreed that the original will shall control in all things in the disposition and division of the estate of F. M. Fore, deceased, with the following exceptions: The right of M. O. Earl to an undivided one-half interest in the 63½ acres of land mentioned in the instrument dated October 4, 1922, shall be respected, and the rights of the 'legal heirs' of F. M. Fore to an undivided one-half of all live stock belonging to said estate, as set forth in the codicil dated November 2, 1922, shall likewise be respected.

"(7) It is further agreed that all of the provisions in said will dated July 21, 1921, providing that certain property therein named be held by the executors for any definite time and sold by them and the proceeds deposited in the Citizens' State Bank of Greenville and the Guaranty State Bank of Lone Oak for any length of time shall be disregarded, and that the property belonging to said estate shall immediately upon the probate of said instruments be subject to partition and division among the parties in accordance with their several interests.

"(8) It is further agreed that an instrument containing the terms and provisions of this instrument shall be drawn up, signed, and acknowledged by all the parties hereto and by the husbands of the married women who are parties

hereto, so as to convey a complete title to the respective parties in accordance with their respective interests as herein set forth.

"(9) It is further agreed that the executors of the will dated July 21, 1921, shall have full power and authority to make partition and division of the funds and personal property belonging to said estate in accordance with the provisions of said instruments as modified by this agreement."

This agreement was signed only by the attorneys representing the different parties. Soon after that agreement was executed Mrs. Fore joined the other interested parties in an application to probate all of the different instruments purporting to be the wills of her husband, and judgment to that effect was rendered in the county court. Some time later the heirs of Fore, who, with slight exceptions, were left out of the wills, filed a suit seeking to set aside the probate order upon the ground that Fore did not have sufficient mental capacity. They also attacked the agreement under which the different wills were probated, as contrary to public policy. The appellant, Mrs. Fore, was made a party defendant in that suit, with others, at whose instance the wills were probated, and through her attorneys joined in resisting the contest. A trial in the county court resulted in a judgment against the contestants, from which they prosecuted an appeal to the district court. Pending that appeal, and a few days before the trial in the district court, the appellant discharged the attorneys who had till then represented her, employed other counsel, and through the latter filed a separate answer and cross-bill in which she sought to have the agreement for the probate of the wills canceled and the probate order modified so as to exclude the first will executed by her husband. That instrument was attacked upon the ground that it was impliedly revoked by the latter will made in October and the codicil thereafter added. In the trial in the district court a peremptory instruction was given against all the contestants, including the appellant. She alone has appealed, and only that branch of the controversy need be considered.

It is apparent from the record that the peremptory instruction against the appellant was based upon the proposition that she was estopped by the agreement under which the different instruments were probated. She assails the validity of the agreement upon several grounds: (1) That it was contrary to public policy, because it made a different disposition of the property than that provided for by the testator; (2) that it was without consideration; (3) that it was not signed by all of the parties who were interested under the wills, and was not binding; (4) that some of the interested parties were married women, and the agreement has not been executed by them as required by statute for the conveyance of their separate real property. She

further contends that the testimony that she did not understand the nature and legal effect of the agreement was such as to require that issue to be passed upon by the jury.

[1] It has been definitely decided by the courts of this state, and of many other states, that the beneficiaries under a will have a right to agree among themselves upon any distribution they see proper of the property bequeathed to them. Stringfellow v. Early, 15 Tex. Civ. App. 597, 40 S. W. 871; Dudgeon v. Dudgeon, 119 Ark. 128, 177 S. W. 402; Walker v. Irby (Tex. Civ App.) 229 S. W. 333. That holding is based upon the proposition that the property is theirs. No one else is interested in its disposition, and they may, with propriety, make any distribution of it that suits them, so long as they do not invade the rights of other parties or infringe some rule of public policy.

[2] It is true that under the terms of the agreement and the first will Mrs. Fore received less than she would have received under the last will and the codicil. But the evidence shows that there were threats of a contest of the last will by the beneficiaries under the first will if Mrs. Fore refused to agree to the probate of the first will. The evasion of that contest is relied upon as a sufficient consideration for Mrs. Fore's execution of the agreement. It is not necessary for the evidence to show, in order to furnish a sufficient consideration, that there were legal grounds for the contest; but it is sufficient if the parties thought there were good grounds, and that a contest would be made. Fontaine v. Davis & Powell (Tex. Civ. App.) 164 S. W. 386, and cases cited.

[3] Some of the beneficiaries under the wills were not parties to the agreement. But their interests were not affected by the terms of the agreement, and for that reason it was not necessary that they should become parties to that instrument.

[4] It appears from the record that some of the parties represented by the attorneys were married women. The contention is made that they are not bound by the agreement because they did not execute it in conformity with the requirements of law regulating the conveyance of their separate real estate by married women. The agreement was acquiesced in by all of the parties and was made the basis of a judgment in the county court. The married women, who it is claimed were not bound by the agreement are parties in this suit, and are resisting Mrs. Fore's efforts to have the agreement canceled. If the final judgment in this case is affirmed, the original probate order will be binding upon all parties to this suit. If that be the legal effect of this litigation, then there is no reason why Mrs. Fore should have the agreement canceled upon the ground that it is not binding upon others.

[5] The contention is further made that

she did not understand the nature and legal effect of the agreement, and that her testimony was sufficient to require the submission of that issue to the jury. An examination of Mrs. Fore's testimony shows that she had several conferences with her attorneys, who advised her fully regarding her rights under the different instruments. She testified at some length in her own behalf. Among other things, she said:

"I don't know that I told him (her attorney) to go to work and get an agreement between the legatees under both wills and to probate both wills. I was depending upon him to see after it. I did want him to settle it, and I wanted it settled by having both wills probated. The only talk I had at that time was with Mr. Bob Neyland (her attorney); but I don't remember whether he told me the only way that could be done was by having an agreement. I believe he did tell me in that conversation that he would call up Judge Clark, or some one, and see if some kind of an agreement could be made."

She further testified that after going to Greenville she, together with her brother, had a conference with her attorney and attorneys representing other parties. She admitted that on that occasion her attorney tried to explain the whole matter to her. She says, however, that she did not understand it, but that she told him she still wanted both wills probated. She testified further:

"I did understand that the agreement was made for the purpose of settling the estate, but I didn't understand how it was to be settled. My understanding was that the agreement was not to be signed at that time—I was leaving that up to my lawyer. * * * Mr. Neyland didn't leave me the agreement. He gave me a copy or sent me a copy. The agreement is signed for myself by Neyland & Neyland, my attorneys, and by Clark & Sweeton and Harrell & Starnes, attorneys for the other parties. * * * I think that in the conversation with Mr. Neyland in Judge Clark's office he told me what my legal rights were under each will. I think he told me what I would be entitled to under the first will, and what I would be entitled to under the second, but that there was a conflict between the two instruments and that when there was a conflict the last will would prevail over the first. He might have told me what I was entitled to under each will. I don't remember just what he said about it. I did tell him then that I wanted both wills probated and did not want the last will probated alone at all; I didn't think it ought to be done that way. As well as I remember, that is just what I told him."

Again she said:

"Mr. Bob Neyland in his office talked right smart to me about what I would be entitled to under each will. I will say that he told me what I would be entitled to under each will. I understood from what he told me what I would be entitled to under each instrument separately. I think I understood further more from what he told me that we could not probate both the documents unless we had the agreement of the legatees under both instruments. * * * I can't say when I came to myself—how long it was after the agreement was signed. I don't know. I did not say that I was beside myself. I began to realize what the agreement was about the time I went to see Walker Garrison. Walker Garrison did not know anything about it until I went to see him. I guess this was before the wills were probated; but I did understand what the agreement was before the wills were probated, because my brother and I and Walker Garrison came to see my lawyers about it. * * * I did attend the county court when both these wills were probated, and did not raise any objection whatever to the probating of the wills. I attended the county court when the suit was heard. The suit was filed August 1, 1923, and was heard in September following—last September. I attended that trial. I authorized my lawyers to make a fight against these plaintiffs to uphold the wills and the agreement. I wanted the wills upheld. If my lawyers made a fight to uphold the wills, I don't know it. He didn't say anything. I did hire him to uphold the wills, and the wills were sustained in the county court; I understand that."

She further testified:

"I reckon I understood the proceeding in the probate court when the wills were probated. I reckon I joined in the objection to probate the wills. I was looking to Mr. Neyland to attend to it. When the suit was brought to set aside the wills and I consulted my attorneys to make a defense and sustain both the agreement and the wills, I understood the agreement. * * * I have got the 237 acres of land and the things that are called for in the first will, and I am not satisfied, I want it all, all that is coming to me. * * * I attended the trial in the county court when they tried to set the wills aside. I understood what the agreement was at that time, and I knew that both the wills had been probated under the agreement; I knew that. I knew these people were suing to set those proceedings aside; that is what I thought they were doing. I can't say that I exactly knew it. I did get a letter from my lawyers dated September 12, 1923, in which they told me that this contest had been set down for Monday morning and that it was necessary for me to be present at 9 o'clock that day. I was present and heard that contest. My lawyers represented me in that suit. We fought to have the wills upheld, and at that time I knew all about the agreement and everything and understood it."

The former attorneys for the appellant, and other attorneys who participated in the negotiation for the agreement which she attacks, testified clearly and unequivocally that the agreement was fully and fairly explained to the appellant; that they obeyed her instructions in having it filed and made the basis of the judgment probating the three instruments executed by F. M. Fore.

[6] We are of the opinion that the trial court correctly held that Mrs. Fore was

estopped at that stage of the proceedings to have the judgment probating the first will set aside.

The judgment will be affirmed.