COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-070-CV

 

 

IN THE
MATTER OF THE

GUARDIANSHIP OF

BEULAH BOATSMAN,

AN INCAPACITATED PERSON                                                                

                                                                                                        

 

                                              ------------

 

          FROM COUNTY
COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

This is an appeal from an order appointing a
guardian of the person for appellant, Beulah Boatsman.  In three issues, appellant challenges the
legal and factual sufficiency of the trial court=s
finding that she is incapacitated, the trial court=s
refusal to approve a pretrial compromise and settlement agreement, and the
trial court=s refusal to create a limited
guardianship.  We affirm.








Background
Facts

In April 2007, Marlene
Henderson, a caseworker for Texas Adult Protective Services (APS), visited
appellant=s home to investigate an
allegation that appellant was being physically neglected due to unsanitary
conditions in her home.[1]  Appellant, a widow, lived with her son and
approximately twelve dogs and cats.  

Henderson found appellant=s home
to be unclean and unsanitary, with an Aoverpowering@ smell
and many animals inside.  Accordingly,
APS arranged for appellant to receive in home health care services from a
private agency.  However, the agency had
to terminate the services because of the dogs in the home.  Appellant turned down an offer by APS to find
a place for appellant at an assisted living facility.  APS also tried to provide adult day care for
appellant, but she lived outside town, and transportation was not available.   








From April 2007 to the time of trial in January
2008, Henderson visited appellant=s home
on a monthly basis.  Normally, appellant
was oriented as to time and place.  More
than once, Henderson saw animal feces in the living room and kitchen, and twice
she smelled Aoverpowering@ cat
urine in appellant=s bedroom.  Additionally, Henderson thought appellant=s son
was intoxicated and Avery manic@ during
one of the visits.  She tried to talk to
appellant alone during that visit, but appellant=s son Awould
burst through the door@ and was Akind of
frightening.@ 
During some of her other visits, Henderson smelled alcohol on appellant=s son. 

In September 2007, Wichita County Sheriff=s Deputy
Derrald Choate responded to a call from an ambulance service for help with an
intoxicated person at appellant=s
residence.  According to Deputy Choate,
the ambulance service had Ahad
prior experience out there.@  Appellant told Deputy Choate that she and her
son had been arguing and that she was afraid her son would someday get drunk
and kill her.  Appellant seemed oriented
as to time and place, but she also told Deputy Choate that she had not eaten
for two days. 








Deputy Choate spoke to appellant=s son
and thought he was intoxicated.[2]  Although he did not make any threats against
appellant, he did tell Deputy Choate that he wanted appellant out of the home
that day.  Although, according to Deputy
Choate, appellant did not want to leave her house, the ambulance service took
appellant to the hospital for examination, and she did not return home until
October 11, 2007. 

Deputy Choate described the condition of the
house as Aterrible.@  He saw dog feces on the couch, floor, and Aall over@ the
kitchen.  He also smelled a very strong
odor of feces and urine.  Deputy Choate
took photos of the condition of the house that corroborate his testimony.  

Dr. Henry Sanchez-Leal, a psychiatrist, examined
appellant for about thirty to forty-five minutes on September 13, 2007 to
determine if she needed to be admitted to Red River Hospital for her mental
condition.  He continued to observe her
daily for about ten to fifteen minutes during the month that she stayed at the
hospital.  Dr. Sanchez-Leal diagnosed
appellant has having severe Alzheimer=s
dementia with delusions.  At trial, Dr.
Sanchez-Leal testified that this condition affects a person=s
ability to initiate and stop actions and to anticipate consequences and that a
gradual deterioration occurs if left untreated. 
He prescribed medication for appellant, but he also said that medication
will only slow the progress of the disease. 
Dr. Sanchez-Leal agreed that appellant=s mental
or physical conditions made her substantially unable to provide herself with
food, clothing, or shelter; to care for her own medical needs; or to manage her
own finances.  However, he also agreed
that appellant was discharged to her home because it was safe to release
her.  








On October 30, 2007, Debra King, a guardianship
specialist for the Texas Department of Aging and Disability Services, assessed
appellant to determine if she was a candidate for guardianship.  Appellant was able to give King her name,
birth date, and the season,[3]
but she was unable to tell King what year it was.  She was also unable to do any abstract
thinking.  Appellant=s
long-term memory appeared to be intact, but she could not answer specific
questions about cooking or personal safety issues.  When King asked appellant about safe cooking
procedures, appellant answered that she did not cook anymore.  Similarly, when King asked her about fire and
personal safety, appellant answered, A[M]y
memory is gone.@ 
She could not answer King=s
questions about what to do in case of a fire, and she did not know what
physical or mental abuse or neglect was. 


Appellant was dirty and her hands were filthy and
black all over, especially under her fingernails.  King noticed that the house still smelled Aterribl[y]@ of
animals, feces, and urine and that there were dogs all over the  furniture. 
Additionally, appellant=s son
appeared to be intoxicated.  He refused
to allow King access to any part of the home other than the living room.  








As a result of King=s
assessment and Dr. Sanchez-Leal=s
examination, on November 30, 2007, the Department of Aging and Disability
Services filed an application for appointment of a guardian of the person for
appellant.  In it, the Department alleged
that appellant is incapacitated and unable to provide for her own food,
clothing, or shelter or to manage her own physical health or financial
affairs.  

The trial court conducted a bench trial on
January 18, 2008.  After Dr. Sanchez-Leal
testified for the Department, the parties presented a proposed agreement to the
trial court for approval.  The proposed
agreement provided that (1) the Department would become appellant=s
guardian of the person, (2) appellant would be initially placed in her home,
where she would remain if the house stayed clean, (3) the Department could
remove appellant if it determined, in its discretion, that the house was not
clean, (4) appellant could not refuse or interfere with any services provided
by the Department, nor could her son interfere with such services, and (5) the
Department would provide a one-time cleaning of the house to establish the
condition in which the house would need to remain.  The trial court refused to approve the
agreement, and trial proceeded. 
Appellant did not object to the trial court=s
refusal to approve the settlement at that time. 









Appellant was ninety-two years old when she
testified at trial.  She said that her
son prepared all her meals and was Avery
good.@  According to appellant, her son helps her Awith
anything,@ including getting dressed and
taking her medicine.  Appellant did not
know what medicines she takes, only that there are seven of them.  Appellant testified that she receives social
security benefits of approximately $900 per month and that she and her son put
their checks together to pay expenses. 
Her son pays all the bills.  

Appellant also testified that her memory is not
good.  She denied ever having been at
home when APS visited and did not remember there being any concerns about it
being dirty.  According to appellant, it
is not hard to keep the house clean even with all the animals because her son
gets up at 6:00 a.m. every morning and cleans the house.  Appellant did not know how many dogs she had,
but she insisted that her house was clean. 


According to appellant, her son has taken very
good care of her.  She testified that she
wanted to stay at home because she did not want to be separated from her dog
and cat.  When asked if she were willing
to work with the State if she could stay home, appellant stated, AI=m not a
mean person.  I=m a good
person.  They=re
trying to make me mean, I think.@  








Appellant=s son
James Ronald Boatsman, Ronnie, testified that he was sixty-six years old and
retired; he had lived with his mother for the past twelve years off and on and
for the past eight years continuously. 
According to Ronnie, appellant was capable of feeding herself, but she
could not prepare her own meals.  He said
he prepared at least two meals a day for her; he prepared three when Meals on
Wheels did not deliver her a dinner. 
Appellant was well fed and not emaciated.  According to Ronnie, appellant only needs
help getting dressed sometimes; however, someone from Falls Home Health was
coming to the house twice a week to bathe her. 
He said that appellant can go to the bathroom; he admitted that she had
been a little incontinent in the past, but the doctor changed her medication,
and she no longer had a problem with that. 
Ronnie testified that he mostly provided Avisual
assistance@ to his mother; he was afraid
that she might fall down and break her hip. 


Ronnie said that the checking account they used
was in appellant=s name only.  He deposited her checks into the account and
mailed all the bills, but he had his mother sign everything.  According to Ronnie, having her sign things
keeps her mind active.  Ronnie denied
that appellant had a bad memory.  He said
appellant read the newspaper every day and knew who the President was; he
described her memory as Aexcellent.@ 








Ronnie admitted that Amarillo APS had
investigated appellant=s home circumstances when they
lived in Amarillo.  He also admitted that
the investigator had found a dead cat and dog in that home although he
explained that they had only recently died and he was waiting to bury
them.  Ronnie denied that there was ever
urine or feces in the home in Wichita County, but he admitted that with twelve
dogs and cats, Athere are accidents.@  Ronnie said that the dogs and cats were like
appellant=s children and that she was Apanic-stricken@ at the
thought of going to a nursing home.  

Ronnie admitted to having a misdemeanor DWI
conviction between one and four years before trial; he was not sure exactly
when it had occurred.  He also admitted
to drinking beer but said he drinks only one quart per day and never more.  He said sometimes appellant drinks a couple
of cups of his beer. 

Appellant was hard of hearing and had gotten
hearing aids two days before trial.  She
did not have them at court the day of trial; Ronnie explained that they had
forgotten them.  

After the trial ended, the trial court stated on
the record,

Court finds at this time [appellant] does suffer from dementia,
Alzheimer=s, severe; that she is
also indigent.  And the Court will grant
full guardianship over her, finding that she is incapacitated, and she is in
need of a guardianship over her person.

 

Court finds she=s a victim of
neglect.  Court finds that the present
residence that she resides in is not acceptable for human habitation; that it=s a dog kennel.  And the Court will not allow her to return
there.

 

She needs to be placed outside of that filthy, reprehensible
environment and placed where she can be properly cared for. . . .

 








Accordingly, on January 28, 2008, the trial court signed an order
finding that appellant is incapacitated under section 601 of the probate code
and appointing the Department as guardian of the person for appellant.  Appellant timely filed a motion for new trial,
which the trial court denied.  

Sufficiency of Evidence of Incapacity

In her first issue, appellant contends that the
evidence is legally and factually insufficient to prove that she is
incapacitated under sections 601 and 684 of the probate code, a fact which must
be proven by clear and convincing evidence. 
Tex. Prob. Code Ann. '' 601,
684(a)(1) (Vernon 2003 and Vernon Supp. 2008).

Standards of Review








In a trial to the court in which no findings of
fact or conclusions of law are filed, the trial court=s
judgment implies all findings of fact necessary to support it.  Pharo v. Chambers County, 922 S.W.2d
945, 948 (Tex. 1996).  When a reporter=s record
is filed, however, these implied findings are not conclusive, and an appellant
may challenge them by raising both legal and factual sufficiency of the
evidence issues.  BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002).  When such issues are raised, the applicable
standard of review is the same as that to be applied in the review of jury
findings or a trial court=s findings of fact.  Roberson v. Robinson, 768 S.W.2d 280,
281 (Tex. 1989).  The judgment must be
affirmed if it can be upheld on any legal theory that finds support in the
evidence.  Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990).

Clear and convincing evidence is that measure or
degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.  Tex. Civ. Prac. & Rem. Code Ann '
41.001(2) (Vernon Supp. 2007); Tex. Fam.
Code Ann. ' 101.007 (Vernon 2002); Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994).  This intermediate standard falls between the
preponderance standard of civil proceedings and the reasonable doubt standard
of criminal proceedings.  In re G.M.,
596 S.W.2d 846, 847 (Tex. 1980); State v. Addington, 588 S.W.2d 569, 570
(Tex. 1979).  While the proof must weigh
heavier than merely the greater weight of the credible evidence, there is no
requirement that the evidence be unequivocal or undisputed.  Addington, 588 S.W.2d at 570.








In reviewing the evidence for legal sufficiency,
we must determine whether the evidence is such that a fact-finder could
reasonably form a firm belief or conviction that its finding was true.  Diamond Shamrock Ref. Co. v. Hall, 168
S.W.3d 164, 170 (Tex. 2005); Sw. Bell Tel. Co. v. Garza, 164
S.W.3d 607, 627 (Tex. 2004).  We must
review all the evidence in the light most favorable to the finding.  Hall, 168 S.W.3d at 170; Garza,
164 S.W.3d at 627.  This means that we
must assume that the fact-finder resolved any disputed facts in favor of its
finding if a reasonable fact-finder could have done so.  Hall, 168 S.W.3d at 170; Garza,
164 S.W.3d at 627.  We must also
disregard all evidence that a reasonable fact-finder could have
disbelieved.  Hall, 168 S.W.3d at
170; Garza, 164 S.W.3d at 627.  We
must consider, however, undisputed evidence even if it is contrary to the
finding.  City of Keller v. Wilson,
168 S.W.3d 802, 817 (Tex. 2005); Hall, 168 S.W.3d at 170.  That is, we must consider evidence favorable
to the finding if a reasonable fact-finder could and disregard evidence
contrary to the finding unless a reasonable fact-finder could not.  Wilson, 168 S.W.3d at 827.

In reviewing the evidence for factual
sufficiency, we must determine whether, on the entire record, a fact-finder could
reasonably form a firm conviction or belief that its finding was true.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  If, in light of the entire
record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not
reasonably have formed a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient. 
H.R.M., 209 S.W.3d at 108. 









We must not supplant the trial court=s
judgment with our own.  Id.;
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).  The jury is the sole judge of the
credibility of witnesses and the weight to be given their testimony.  H.R.M., 209 S.W.3d at 108, Golden
Eagle, 116 S.W.3d at 761.  If we
reverse on factual sufficiency grounds, then we must detail in our opinion why
we have concluded that a reasonable fact-finder could not have credited
disputed evidence in favor of its finding. 
Golden Eagle, 116 S.W.3d at 761; J.F.C., 96 S.W.3d at
266-67.

Applicable Law








A probate court appoints a guardian according to
the circumstances of each case and considering the best interests of the
ward.  Tex.
Prob. Code Ann. ' 677(a) (Vernon 2003); In re
Guardianship of Hinrichsen, 99 S.W.3d 773, 780 (Tex. App.CHouston
[1st Dist.] 2003, no pet.).  Before
appointing a guardian, the court must find by clear and convincing evidence
that the proposed ward is incapacitated, that it is in the proposed ward=s best
interest to appoint a guardian of the proposed ward, and that the rights of the
proposed ward or the proposed ward=s
property will be protected by the appointment of a guardian.  Tex.
Prob. Code Ann. ' 684(a); Guardianship of
Hinrichsen, 99 S.W.3d at 780.  An
incapacitated person is defined as Aan adult
individual who, because of a physical or mental condition, is substantially
unable to provide food, clothing, or shelter for himself or herself, to care
for the individual=s own physical health, or to
manage the individual=s own financial affairs.@  Tex.
Prob. Code Ann. ' 601(14)(B); Guardianship of
Hinrichsen, 99 S.W.3d at 780.  The
court must also find by a preponderance of the evidence that the proposed ward
is totally without capacity as provided by the code to care for himself or
herself and to manage his or her property, or the proposed ward lacks the
capacity to do some, but not all, of the tasks necessary to care for himself or
herself or to manage his or her property. 
Tex. Prob. Code Ann. '
684(b)(4); Guardianship of Hinrichsen, 99 S.W.3d at 780.  Further, A[a]
determination of incapacity of an adult proposed ward . . . must be evidenced
by recurring acts or occurrences within the preceding six‑month period
and not by isolated instances of negligence or bad judgment.@  Tex.
Prob. Code Ann. ' 684(c); Guardianship of
Hinrichsen, 99 S.W.3d at 780.

Analysis








Here, the evidence showed that appellant suffered
from a mental or physical condition of a type that causes the loss of cognitive
function:  Alzheimer=s
dementia.  Appellant testified that her
memory is not good.  In addition, the
doctor who diagnosed appellant after having observed her daily for a month
while she was in the hospital opined that appellant is unable to substantially
provide for her own food, clothing, or shelter, to make her own medical decisions,
or to manage her own finances.  Appellant
testified that she is unable to prepare her own food and that she is totally
dependent on her son or Meals on Wheels to prepare meals for her.  However, the evidence also showed that
appellant told someone at least once that she had not eaten for two days; thus,
there is evidence that if appellant=s son
failed to feed her on the days she did not receive Meals on Wheels, she would
have no way of feeding herself.  Appellant
could not manage her multiple medications on her own.

Additionally, the evidence showed that appellant
was not able to take care of her surroundings even with the help of her
son.  She lived in a house with twelve
dogs and cats, and several people had observed animal feces on the furniture
and on the floor as well as smelled the strong odor of pet urine in the
house.  King testified at trial that the
odor from cat urine can pose a health risk. 
Appellant was dirty when King came to the house to assess her potential
need for a guardian.  Thus, there is
evidence that appellant=s son, upon whom she was almost
totally dependent for almost all of her needs, consistently failed to maintain
clean and sanitary shelter for appellant and that she could not do so on her
own.








Although appellant was oriented in time and place
when she was examined and at the time of trial, the evidence also shows that
she was nevertheless unable to perform the functions needed to provide for
herself appropriately.  When King asked
appellant what one thing she would like to change about her environment,
appellant said Aevery damn thing@ and
that she had never lived that way in her life.

We conclude and hold that the evidence presented
at trial was both legally and factually sufficient to prove by clear and
convincing evidence that appellant was incapacitated under the definition in
section 601 of the probate code.  See
Guardianship of Hinrichsen, 99 S.W.3d at 782B83.  We overrule appellant=s first
issue.

Settlement Agreement

In her second issue, appellant contends that the
trial court abused its discretion by refusing to approve the settlement
agreement proposed by the parties at trial.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling, if they are not
apparent from the context of the request, objection, or motion.  Tex.
R. App. P. 33.1(a); see also Tex.
R. Evid. 103(a)(1).  If a party
fails to do this, error is not preserved, and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh=g).  The objecting party must get a ruling from
the trial court.  This ruling can be
either express or implied.  Frazier v.
Yu, 987 S.W.2d 607, 610 (Tex. App.CFort
Worth 1999, pet. denied).  If trial judge
refuses to rule, an objection to the refusal to rule is sufficient to preserve
error.  Tex.
R. App. P. 33.1(a)(2).

Appellant failed to timely object at trial to the
trial court=s refusal to approve the
settlement agreement.  She had ample
opportunity to raise the issue at trial, yet she failed to do so until her
motion for new trial.  Accordingly, she
failed to preserve this issue for our review. 
See Tex. R. App. P.
33.1(a); Bushell, 803 S.W.2d at 712.








Moreover, appellant does not challenge the trial
court=s
finding that a guardianship is in her best interest, and the evidence supports
such a finding.  It also supports a
conclusion by the trial court that appellant would be endangered by living at
home with a son who drinksCand of
whom the evidence shows she was afraid on at least one occasionCeven if
he were somehow able to maintain an acceptable level of cleanliness in the
home.  Accordingly, we cannot say that
the trial court=s refusal to approve the
settlement agreement was an abuse of discretion.[4]  See Eddins v. Estate of Sievers, 789
S.W.2d 706, 707 (Tex. App.CAustin
1990, no writ) (holding that trial court is vested with broad discretion in
determining best interest of a ward).  We
overrule appellant=s second issue.

Refusal to Create Limited Guardianship

In her final issue, appellant challenges the
trial court=s refusal to create a limited
guardianship.  As in her second issue,
appellant contends that keeping appellant in her home is a less restrictive
alternative to appointing the Department guardian of her person.

Probate code section 602 provides that

[a] court may appoint . .
. a guardian limited authority over an incapacitated person as indicated by the
incapacitated person=s actual mental or
physical limitations and only as necessary to promote and protect the well‑being
of the person. . . .  In creating a
guardianship that gives a guardian limited power or authority over an
incapacitated person, the court shall design the guardianship to encourage the
development or maintenance of maximum self‑reliance and independence in
the incapacitated person.

 

Tex. Prob. Code Ann. ' 602
(Vernon 2003).  A trial court has broad
discretion in deciding the type of guardianship and identity of the
guardian.  Eddins, 789 S.W.2d at
707.








Here, there is sufficient evidence to support the
trial court=s decision that a permanent
guardianship with full authority over the person is in appellant=s best
interest.  All of the services that APS
tried to arrange for appellant failed, and despite numerous visits to appellant=s home,
the conditions remained the same. 
Eventually, appellant was hospitalized for a month.  The evidence showed that appellant was
dependent on her son and that he appeared to be intoxicated regularly.  As the trier of fact, the trial court was in
the best position to observe the credibility and demeanor of the witnesses and
determine that appellant=s living conditions would not
have improved if she were allowed to remain at home under a limited
guardianship.  See Golden Eagle
Archery, 116 S.W.3d at 761.  Thus, we
conclude and hold that the trial court did not abuse its discretion by refusing
to create a limited guardianship under probate code section 602.  See Eddins, 789 S.W.2d at 707.  We overrule appellant=s third
issue.

Conclusion

Having overruled appellant=s three
issues, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, GARDNER, and
WALKER, JJ.

DELIVERED: August 21, 2008











[1]Henderson testified at
trial that since 2002, APS had validated ten cases involving appellant; those
cases included physical neglect, physical abuse, mental health neglect,
emotional and verbal abuse, medical neglect, and exploitation.  APS had started a guardianship proceeding
previously, while appellant and her son were living in Amarillo, but the
proceeding was never completed because appellant and her son moved to Wichita
County.  





[2]The call came in around
2:00 p.m.  One of the pictures of the
house that day shows an almost empty approximately forty ounce bottle of beer
on a table.  





[3]Appellant knew it was
almost Halloween.  





[4]As support for her
contention, appellant cites Stringfellow v. Early, 15 Tex. Civ. App.
597, 40 S.W. 871 (1897), for the proposition that the law favors the settlement
of disputes.  Although we agree with this
proposition generally, appellant cites no authority requiring the trial court
to accept a proposed settlement agreement in a guardianship proceeding.