**In the ESTATE OF Patricia Raye HALBERT, Deceased.**

**No. 06–04–00074–CV.**

Court of Appeals of Texas, Texarkana.

Submitted March 17, 2005.

Decided Aug. 18, 2005.

Rehearing Overruled Sept. 27, 2005.

John R. Mercy, Mercy & Carter & Tidwell, LLP, Texarkana, M. Keith Dollahite, M. Keith Dollahite, PC, Tyler, for appellant.

Ken W. Good, Kent, Good & Anderson, PC, Tyler, for Jane Carroll.

Michael E. Gazette, Law Office of Michael E. Gazette, Tyler, for Judy Box.

Howard W. Britain, Tyler, pro se.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Patricia Raye Halbert died in 2000. She left behind three putative wills [1] and her immediate family—husband, Robert L. Halbert (Robert), and three adult children, Robert Stephen Halbert (Steve), Judith H. Trickey Box (Judy), and Patti Jane H. Carroll (Jane)—divided on which of the three wills should be probated. Robert urged the probate of Will Three, while Judy urged the probate of Will Two. Ultimately, the dispute led to a mediation and a partial Mediated Settlement Agreement (MSA),[2] which is the subject of this appeal.

---

**1.** The first Will (Will One), dated in 1980, left all of Patricia's property to her husband, Robert. The second Will (Will Two), dated in 1986, left everything to the three children, Steve, Judy, and Jane, leaving nothing to Robert. The third Will (Will Three), dated in 1997, republished Will One, thus leaving everything, once again, to Robert.

**2.** Later in this opinion, we detail the MSA terms which are relevant to this appeal.

In competing motions for summary judgment arising from what became rather convoluted litigation, Judy sought to enforce, and Robert sought to have declared unenforceable, the MSA. The trial court granted Judy's motion for summary judgment to enforce the MSA and denied Robert's motion.

In this opinion, we (A) set out a more detailed account of the factual and procedural history of this case, and then (B) provide our decision and legal analysis: we hold that (1) the MSA is an agreement not to probate a will—so it must provide an alternative distribution scheme—but (2) the MSA does not provide an alternative distribution scheme—so it is unenforceable. We reverse the judgment of the trial court and render judgment that the MSA is unenforceable.

## (A) FACTUAL AND PROCEDURAL HISTORY

Robert and Patricia Halbert were married and had three children: Steve, Judy, and Jane. In 1980, Patricia executed her first will (Will One). In this will, she named Robert the independent executor and left all her property to him unless he predeceased her, in which case the property would go to their three children.

In 1986, Patricia executed a second will (Will Two), in which she named Judy as independent executor and left all her property to the three children. Will Two made no provision for Robert.

In 1997, Patricia executed a third will (Will Three), a holographic instrument which republished Will One. Two months following the execution of Will Three, Patricia executed a deed conveying all her real property to Robert (1997 Deed).[3] This deed was recorded later in time, approximately one month before Patricia's death on July 3, 2000.

Robert applied to probate Will One pursuant to the terms of Will Three. Judy contested Robert's application to probate Will One and applied to probate Will Two, in which all of Patricia's property went to the children. Robert then filed an amended application to probate Will Three which, he argued, republished Will One or, alternatively, revoked Will Two, causing Patricia's estate to pass by intestacy. As we will discuss further at a later point, Jane, the youngest child, entered her first appearance,[4] stating that she was a beneficiary under Will Two and renouncing any right to serve as personal representative. The parties then jointly moved to "issue an order requiring the parties to submit this matter to mediation." The trial court granted this motion.

On September 10, 2001, Robert and the three children attended a mediation from which came the MSA. Boilerplate, introductory provisions of this MSA indicate that the parties "have agreed to settle the above-referenced cause on the terms set forth herein, and enter into this Agreement on said date." The MSA also provides that, "in the event of any dispute arising from the mediation or this Agreement, the parties agree to submit same" to the named mediator. The MSA also included the following provisions:

The parties understand that it is intended that there is to be a more comprehensive compromise settlement agreement; releases, and/or further documentation of this settlement; neverthe-

---

**3.** Apparently, Robert and Patricia executed "mirror image" deeds, one from Patricia in favor of Robert and the other from Robert in favor of Patricia; contemplating that only one would be recorded.

**4.** Steve, the oldest child, although present during mediation, was not a formal party in these proceedings.

less, the parties intend this Agreement to comply with the requirements of Rule 11 T.R.C.P., and Section 154.071, T.C.P.R.Code.

Each party agrees to execute and file an agreed order dismissing all claims in the above case with prejudice.

The parties agree that, as soon as possible, a closing of this transaction shall occur when the parties will exchange executed settlement documents and exchange the consideration called for.

In the handwritten, sometimes difficult to read, substantive portions of the MSA, Judy agrees to release any claims she has against the estate and against Robert in exchange for real property, specifically Lot 2B, Block 1013 on Loop 323 in Tyler, Smith County, Texas, worth approximately $1.2 million.

The MSA provides that Robert, Steve, and Jane "will resolve agreement between themselves within 10 days." No one disputes the fact that Steve and Jane never reached an agreement with Robert in this matter. Robert and Steve signed the MSA as defendants. Jane's attorney signed on the defendant's side of the page, on Jane's behalf, with the limitation that the MSA was "approved as to settlement with Jane."

The MSA appears to be intended as a settlement only of Judy's claims on the estate or against her other family members.[5] Jane had made an appearance in the will contest but had not taken an adversarial role at that point. Later, although she had been treated in the pleadings as a defendant, Jane filed her own contest to Robert's application to probate Will Three.

Jane argued below that the trial court should deny Judy's motion for summary judgment. In the trial court's final order, Jane is named as a defendant. In response to Judy's motion to enforce the parties' MSA, Jane filed her answer and denied all of Judy's allegations. Summary judgment was granted against Robert, Steve, and Jane, but Judy's award for attorney's fees was imposed against only Robert and Steve.[6]

However, despite her role in the proceeding below, Jane has filed an appellee's brief in this matter and now argues to this Court that "the trial court was correct in granting [Judy's] traditional and no evidence motion for summary judgment and in denying [Robert's] motion for summary judgment." So, Jane now takes the position that the MSA is valid and enforceable.

Shortly after the MSA was signed, Judy sued to cancel the 1997 Deed.[7] Judy's suit alleged that the deed did not have a sufficient property description to be valid. Judy explains in her brief that this suit was instituted at the request of Robert's attorneys, using pleadings prepared by them. The record supports this contention as well through a letter from Robert's former attorney discussing the strategy that Judy file this suit, and then the parties would settle that suit, resulting in title to Lot 2B vesting in a manner "contemplated by the agreement." Judy's suit to

---

5. Judy was the only person contesting Robert's application to probate Will One or Will Three at the time the MSA was created. Jane later formally contested the will.

6. This result may be attributable to the fact that the trial court accepted and signed Jane's proposed form of judgment.

7. Judy also recorded a "Notice of Lis Pendens" in the land records in which she stated that the title to all the property conveyed by Patricia to Robert by the 1997 Deed was in dispute. This went beyond the property subject to the MSA.

cancel the 1997 Deed was consolidated into the will contest, where it is still pending.

On November 16, 2001, Judy also filed a pleading in the will contest alleging that she was ready to perform under the MSA, that Robert had failed to comply with the MSA, and that the trial court should order specific performance of the MSA ("Motion for Specific Performance of Mediated Settlement Agreement"). Robert denied the MSA was a valid and enforceable contract and asserted several affirmative defenses to Judy's claim for specific performance. Steve and Jane denied Judy's allegations seeking to enforce the MSA. Later, however, Jane sought to probate Will Two, a change in her prior strategic position.

Robert sought summary judgment, attacking the validity of the MSA on the following grounds:

1. Judy repudiated the MSA by filing her new lawsuit to cancel the 1997 Deed nine days after mediation.

2. The MSA is unenforceable as a family settlement agreement under *In re Estate of Morris*, 577 S.W.2d 748 (Tex. App.-Amarillo 1979, writ ref'd n.r.e.).

3. The MSA is not sufficiently certain to be an enforceable contract.

Jane opposed those grounds and sought summary judgment against Robert, Steve, and Jane, seeking to enforce the MSA on two grounds:

1. Robert, Steve, and Jane breached the MSA, entitling Judy to specific performance.

2. There is no evidence to support Robert's affirmative defenses.

Robert, Steve, and Jane opposed Judy's effort to obtain summary judgment.

The trial court denied Robert a summary judgment and granted Judy a summary judgment. It also ordered Robert, Steve, and Jane to

> each specifically perform the terms of the [MSA] by executing the deed or deeds called for by such agreement to [Judy] conveying all of the Defendants' right, title, and interest to [the Lot] contemporaneously with the tender to Defendants of a written, signed document or documents by which she release any claims she has against [Robert] and the Estate of [the Decedent] and assumes the tax liability agreed upon in such agreement.

The trial court further provided, "Trial is set on the claim of [Judy] for attorney's fees on the —— day of, 2002." The trial court failed to set any date for such trial. Robert appealed the order to the Twelfth Court of Appeals in Tyler, but that court dismissed the appeal, holding that the order was not a final probate order subject to appeal.[8]

A jury trial was held, and as a result the trial court awarded attorney's fees to Judy against Robert and Steve. Each party then submitted a proposed judgment and objected to the other's proposal. Ultimately, the trial court, again, adopting Jane's proposed judgment, signed its "Final Judgment Regarding Mediated Settlement Agreement." The judgment repeats many of the same conclusions contained in the earlier order and, of course, adds the jury's verdict regarding attorney's fees. It also addresses matters not covered by the MSA or by the parties' motions for summary judgment.

## (B) DECISION AND LEGAL ANALYSIS

We review summary judgments de novo. TEX.R. CIV. P. 166a(c); *Rolling Lands*

---

8. *Halbert v. Box,* No. 12–02–00342–CV, 2003 WL 21254918, 2003 Tex.App. LEXIS 4641 (Tex.App.-Tyler May 30, 2003, pet. dism'd w.o.j.) (not designated for publication).

*Invs., L.C. v. Northwest Airport Mgmt., L.P.,* 111 S.W.3d 187, 193 (Tex.App.-Texarkana 2003, pet. denied). The movant has the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Id.* Every reasonable inference must be indulged in favor of the nonmovant. *Id.* When both parties file motions for summary judgment and the trial court grants one and denies the other, we review both motions, determine all questions presented, and render the judgment the trial court should have rendered. *Id.*

### (1) The MSA Is an Agreement Not To Probate a Will

A family settlement agreement is an alternative method of administration in Texas that is a favorite of the law. *See Shepherd v. Ledford,* 962 S.W.2d 28, 32 (Tex.1998); *In re Estate of Hodges,* 725 S.W.2d 265, 267 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.).

■ Robert cites *In re Estate of Morris,* 577 S.W.2d 748, to support his argument that the MSA is unenforceable since it does not meet the requirements of a valid family settlement agreement.

In *Morris,* the decedent's first will devised all of her property to her surviving husband. *Id.* at 751. This will was admitted to probate. *Id.* A second will, executed three years later, left only $1.00 to her surviving husband, and the remaining property in her estate to their two children. *Id.* Soon after the decedent's funeral, the decedent's two children had agreed to destroy the second will because it would upset their father. *Id.* at 751. Later, the decedent's daughter applied to probate this second will. *Id.*

Addressing this situation in terms of the family settlement doctrine, the Amarillo court held that the two children had agreed to not probate the second will but had failed to agree to an alternate plan of distribution and that, therefore, the agreement was ineffective, as a family settlement agreement, to deny probate of the second will. *Id.* at 756. The court emphasized that an agreement not to probate a will must be accompanied by an agreement as to the distribution of the property. *Id.* The court held that the children's knowledge of the 1965 will was insufficient to constitute an agreement between the two of them as to the distribution of the property. *Id.*

■ The family settlement doctrine involves three basic principles: the decedent's right to make a testamentary disposition,[9] the beneficiaries' right to convey their rights,[10] and balancing those compet-

---

9. *The Right to Testamentary Disposition.* A decedent has the statutory right to dispose of his or her property on death in a manner he or she sees fit. TEX. PROB.CODE ANN. § 57 (Vernon 2003). The courts must protect this right as a matter of public policy: "[N]either courts, juries, relatives nor friends of a testator may say how property should be passed by a will or rewrite a will because they do not like the distribution of the property." *Morris,* 577 S.W.2d at 755.

10. *Beneficiaries' Right to Convey.* The second principle underlying the family settlement doctrine recognizes that, on the death of the testator, title of the property in the estate vests in the beneficiaries. Under Section 37 of the Texas Probate Code, when a person dies leaving a will, all of the estate devised or bequeathed by the will immediately vests in the devisees or legatees, subject to payment of the decedent's debts. *Shepherd,* 962 S.W.2d at 32. The beneficiaries of an estate are free to arrange among themselves for the distribution of the estate and for the payment of expenses from that estate. *See* TEX. PROB.CODE ANN. § 37 (Vernon 2003); *Shepherd,* 962 S.W.2d at 32. That being so, the beneficiaries have the right to convey the property after distribution of the estate. *Morris,* 577 S.W.2d at 755. Pointing out that it makes little sense to limit the right of conveyance before receipt

ing rights by requiring an agreement to an alternative distribution plan.[11]

■ Caselaw on the family settlement doctrine supports the conclusion that the family settlement doctrine is applicable generally when there is a disagreement on the distribution of an estate and the beneficiaries enter into an agreement to resolve the controversy. Judy advances at least two arguments why the doctrine does not apply here.

■ First, Judy argues that, since the MSA contemplates that a will eventually will be probated, the family settlement doctrine does not apply here. This position—that the family settlement doctrine is only applicable when the parties agree to not probate *any* will—is inconsistent with caselaw. *Morris* applied the family settlement doctrine on very similar circumstances, when the parties agreed to not probate one will and left another will to be probated. *See id.* at 756–57. The fact that the parties here intend to probate one of the three wills is not relevant to the applicability of the doctrine.[12] The relevant consideration is whether the MSA will have some impact on the distribution of the estate.

Second, Judy argues that the doctrine does not apply because the land to be transferred is, arguably, not estate property. Since it is unclear whether her father owned Lot 2B, Block 1013 by virtue of the 1997 Deed, Judy maintains, this dispute does not involve an agreement not to probate a will and to redistribute estate property.[13] Thus, she contends, this matter falls outside the family settlement doctrine. It is important, however, to look at the nature of the dispute and the attempted resolution itself, rather than the nature of the consideration underlying the agreement or the property being transferred pursuant to the agreement. No matter the ownership of the property constituting consideration, the potential beneficiaries are at odds with one another regarding the distribution of Patricia's estate. Judy was, in effect, exchanging her claims to the estate for the real property.

We also point out the intended effect of the MSA. The parties purportedly entered into the MSA to "to settle the above-referenced cause," meaning the pending will contest. That is, the parties are attempting to settle their differences over the distribution of Patricia's estate. And Judy's agreement to dismiss her claims in the will contest and to release any claim

---

in the regular course of administration of the estate and adding that agreements among the family can end controversies through compromise, the *Morris* court expressed that family settlement agreements are favored by the law. *Id.*

11. *Balancing Rights by Requiring an Agreement to an Alternative Distribution Plan.* To balance the first two principles, the courts impose certain requirements on a family settlement agreement. A valid family settlement agreement must contain both an agreement not to probate a will *and* an agreed plan of distribution to replace the plan set forth in the will. *Id.* at 756. Put another way, if the beneficiaries' settlement does not dispose of all the estate's property, then it cannot replace the will and perform the function of

transferring title to the decedent's estate. *See id.*

12. It will, later, become relevant to the inquiry whether the purported settlement provided an alternate plan of distribution.

13. We add that Judy has also maintained the contrary position in her pleadings in her action to cancel the 1997 Deed when she alleged that the 1997 Deed failed to convey the real property to Robert. That would mean that the real property belonged to the estate. While we understand that this may have been a tax reduction technique, we cannot ignore the fact that Judy has tried to maintain two directly contrary positions in these proceedings.

against her mother's estate are the equivalent of abandoning her application to probate Will Two and relinquishing any right she might have asserted under Will Two.

The MSA certainly invokes the family settlement doctrine. It necessarily involves an agreement, by at least one of the parties, to not probate at least one will, altering the distribution of the estate. In fact, the family settlement doctrine has been applied when there was only "a threat" of a will contest by the beneficiaries under an earlier will if the later will were probated. *Fore v. McFadden,* 276 S.W. 327, 329 (Tex.Civ.App.-Texarkana 1925, writ dism'd). Here, the controversy had proceeded to a formal judicial proceeding on the will contest issue. So, this situation is the type of situation for which the family settlement doctrine was designed. In order to settle the pending controversy, the family would have had to enter into an agreement that meets the specific requirements and addresses the policy concerns of the family settlement doctrine. Otherwise, the MSA is unenforceable and cannot serve as a substitute for Patricia's testamentary disposition, even though the parties disagree as to her intent.

Here, as there was in *Morris,* there is clearly a controversy over which of Patricia's wills should be probated. By the terms of the MSA, "[e]ach party agree[d] to execute and file an agreed order dismissing all claims in [cause number 30,319, the will contest], with prejudice." This general provision would have the effect of Judy relinquishing her claim that Will Two should be probated, leaving the estate to pass by the terms of Will One or, in the alternative, to pass through intestate succession in accordance with Robert's amended application. It appears that it would also have the effect of Robert withdrawing his application to probate Wills One and Three. Judy separately agreed to relinquish any claim in the estate or against her father in exchange for the land in question. So, this constitutes a specific agreement between at least two of the parties to not probate Will Two.[14]

Reading the MSA, we see that there is an agreement not to probate a will. In fact, it could be said that there are several agreements not to probate a will; it is just unclear which will, if any, would be probated ultimately. The uncertainties, however, are more relevant to the second element of the family settlement doctrine—that the agreement also provide an alternate plan of distribution of estate property.

*(2) The MSA Does Not Provide an Alternative Distribution Scheme*

■■■ The law allows for an implied plan of distribution within a family settlement agreement. But courts will not readily imply such a plan for the parties:

> [I]t must appear that an [implied] agreement for the disposition of the property was so clearly within the contemplation of [the parties] that they deemed it unnecessary to express it and, therefore, omitted to do so.

*Morris,* 577 S.W.2d at 757. The parties can even agree to not probate a will and to allow the estate to pass through the intestacy statutes. *See Cook v. Hamer,* 158 Tex. 164, 167, 309 S.W.2d 54, 56 (1958); *Hopkins v. Hopkins,* 708 S.W.2d 31, 32 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). In such situations, the parties, essentially, agreed to let the law redistribute the estate.

Here, we must determine whether the putative beneficiaries' agreements in the

---

14. Of course, in theory, under the MSA, another child could have applied to probate Will Two. In fact, later in the dispute, Jane did make such application.

MSA constitute a sufficiently clear plan to distribute the estate. Since the MSA's provisions could be read to provide for distribution in accordance with the terms of Will One, in accordance with intestate succession, or solely in accordance with agreements contemplated yet nonexistent among the parties, the MSA leaves open a number of possible, but unclear, ways the estate might be distributed if the MSA were enforced. We examine those possibilities.

*Probate of Will One.* Since Judy was the only child with a clearly contrary position at the time of the MSA and since Robert did come to an agreement with her, it could be said that her separate agreement to relinquish her claims against the estate and against Robert would lead to the conclusion that the estate would pass as it would have absent Judy's contest, under the terms of Will One. While this reading of the MSA and interpretation of an alternate plan of distribution would be the most straightforward, it is undermined by the clear references in the MSA that a future agreement was contemplated, yet not ever reached, among Robert, Steve, and Jane. Additionally, Jane's signature limiting her agreement to only the agreement made with Judy appears to reserve her right to enter her own, different, agreement with her father, even if such would conflict with the MSA. All parties agree that no such contemplated agreement was ever reached. We must conclude that the parties, in the MSA, did not agree to distribute Patricia's estate in a manner consistent with Will One.

*Intestate Succession.* If there is no will to be probated, then it could be said that the estate would pass through intestate succession. This method of distribution could be a logical reading of the MSA, since all parties agree to dismiss their claims in the will contest action. But we cannot imply such an agreement to distribute the estate in this manner. Such a plan was "not so clearly within the contemplation of [the parties] that they deemed it unnecessary to express it." *Estate of Morris,* 577 S.W.2d at 757. In fact, the parties did not contemplate distribution through intestate succession. First, the MSA clearly references other, future, agreements to be made.[15] Also, we note that Jane later filed her own application to probate Will Two. Finally, Judy urged at oral argument before this Court that one of the wills will eventually be probated.

*Distribution by Future Agreement Only.* Perhaps, the most sound reading of the MSA would be that the parties contemplated probating no will, but would instead resolve the dispute by a future agreement. Of course, even if this were the case, all parties now agree that the remaining anticipated agreement was never reached, leaving, in fact, absolutely no plan of distribution.

In sum, since the MSA leaves these uncertainties, we conclude that it fails to satisfy the rather stringent requirements of the family settlement doctrine that an agreement provide an alternate plan for distributing estate property.

---

15. To the extent that the handwritten provision calling for future agreement among Robert, Jane, and Steve is seen to conflict with the typewritten, boilerplate provision that all parties are relinquishing their claims in the litigation, and thus releasing all claims to probate *any* will, the handwritten provision controls, calling for the future agreement among the parties. *See J.K. Hughes Oil Co. v. Mayflower Inv. Co.,* 193 S.W.2d 971, 973 (Tex. Civ.App.-Texarkana 1946, writ ref'd); *Martin v. Southern Engine & Pump Co.,* 130 S.W.2d 1065, 1066 (Tex.Civ.App.-Galveston 1939, no writ); *Producers' Oil Co. v. Snyder,* 190 S.W. 514, 516 (Tex.Civ.App.-Fort Worth 1916, no writ).

We sustain Robert's first point of error. The MSA is unenforceable as a matter of law.[16] Due to the disposition of that issue, it is unnecessary to address the remaining points of error.

Accordingly, we reverse and render judgment that Judy take nothing by her action to enforce the MSA and to be paid her attorney's fees in that action.

---

16. We do not consider or pass on the merits of the pending will contest. Rather, our holding simply means that the disputes were not settled through this MSA, since it fails as a family settlement agreement.