**Opinion filed December 31, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00349-CV

_____

## IN THE ESTATE OF EVERETT CHARLES MABERRY, DECEASED

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause No. 1537**

### MEMORANDUM OPINION

This appeal arises from the administration of the Estate of Everett Charles Maberry, deceased, who died intestate. Appellee, Dwana Bradshaw, is the decedent's daughter and the independent administrator of his estate. Appellant, Norma Harper, asserted that she was the decedent's common law wife, and she contested Bradshaw's administration of the estate. We affirm.

Harper and Bradshaw mediated their claims to resolution. The parties subsequently filed their Mutual Release and Settlement Agreement with the probate court. Harper also filed a Motion to Dismiss with Prejudice, asserting that "[a]ll

matters in this case have been settled," which the trial court granted. However, Harper later filed an application to remove Bradshaw as independent administratrix, claiming misfeasance in the administration of the estate. Bradshaw filed a motion for summary judgment on the ground that Harper no longer had standing to seek Bradshaw's removal because of the parties' settlement agreement. The trial court granted the motion for summary judgment, and this appeal followed.

In a single issue on appeal, Harper asserts that the trial court erred by granting Bradshaw's motion for summary judgment on the basis that Harper no longer had standing after the settlement and release. The Estates Code provides that any "interested person" may move to have an independent administrator removed. *See* TEX. EST. CODE ANN. §§ 404.003, .0035 (West 2020). Harper contends that the settlement agreement and release only applied to any claims that Harper had or could have brought before its effective date of January 17, 2017. She asserts that the claims of misfeasance upon which she based her application to remove Bradshaw were not released because they arose after the settlement agreement. Harper contends that she is still an "interested person" after the settlement agreement and release because she was the common law wife of the decedent and may still inherit from his estate as his widow.

Because standing is a requirement of subject-matter jurisdiction, we review a trial court's determination of standing de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010). The resolution of Harper's issue on appeal requires an interpretation of the relevant statutory provisions and the terms of the settlement agreement and release. Statutory interpretation is a question of law that we review de novo. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016). A settlement agreement is enforceable as a written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071 (West 2019). A release is a contract and subject to the same rules of construction. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). We

construe contracts under a de novo standard of review. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). "If we determine that the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012).

We begin our analysis by determining the effect of the settlement agreement and release. Our primary objective is to ascertain and give effect to the parties' intent as expressed in the contract. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). The Mutual Release and Settlement Agreement provides that "it is the desire and intent of [Bradshaw] and [Harper]" to "fully, conclusively, and finally resolve all matters in dispute or controversy between them arising from or relating to any act or omission occurring or arising on or before the Effective Date, the subject matter of the Lawsuit or the Claims." In the agreement, Bradshaw agreed to pay Harper $2,000 "as consideration for compromise, settlement and release of all claim of [Harper] to any part of the Estate." The agreement also reflected that Harper was taking personal property "agreed to by the parties." Bradshaw also agreed that Harper was the common law wife of the decedent.

Harper agreed to "*release, acquit and forever discharge*" Bradshaw and the estate "of and from any and all claims, lawsuits, complaints, demands, indemnities, and liabilities . . . based on or arising from or relating to the facts, incidents and transactions made the subject of the Lawsuit, including but not limited to the Claims and their subject matter, and any other claims that were or could have been asserted in the Lawsuit against the Estate." Harper also agreed to dismiss with prejudice "her claims to the Estate."

Harper contends that she did not release her right to receive an inheritance from the estate as the decedent's widow. She bases this contention on the fact that

she only released "claims" against the estate; she asserts that her right to receive an inheritance from the estate was not a claim against the estate. We disagree with Harper's limited reading of the settlement agreement and release. Under the express terms of the agreement, Harper released all claims and demands that "were or could have been asserted" in the estate proceeding. Harper's right to receive an inheritance from the estate was included within the broad description of a claim or demand that was or could have been asserted in the estate. In this regard, Harper received, as consideration, personal property from the estate and a cash payment from Bradshaw for the "release of all claim of [Harper] to any part of the Estate of Everett Charles Maberry."

The settlement agreement and release executed by Harper and Bradshaw was in the nature of a family settlement agreement. *See Shepherd v. Ledford*, 962 S.W.2d 28, 32 (Tex. 1998) ("A family settlement agreement is an alternative method of administration in Texas that is a favorite of the law."). The family settlement doctrine is applicable generally when there is a disagreement on the distribution of an estate and the beneficiaries enter into an agreement to resolve the controversy. *Estate of Riefler*, 540 S.W.3d 626, 635 (Tex. App.—Amarillo 2017, no pet.); *In re Estate of Halbert*, 172 S.W.3d 194, 200 (Tex. App.—Texarkana 2005, pet. denied). Family settlement agreements are favored in law because they tend to put an end to family controversies by way of compromise. *Estate of Riefler*, 540 S.W.3d at 635; *Estate of Morris*, 577 S.W.2d 748, 755 (Tex. App.—Amarillo 1979, writ ref'd n.r.e.). The expressed intent of the parties in their settlement agreement and release was to finally resolve all claims that Harper asserted to the decedent's estate, including her inheritance claims from the estate.

The next step in our analysis is to determine the effect of the settlement agreement on Harper's status as an "interested person" under the Estates Code. Section 22.018(1) defines an "interested person" as "an heir, devisee, spouse,

creditor, or any other having a property right in or claim against an estate being administered." EST. § 22.018(1) (formerly TEX. PROB. CODE § 3(r) (2007)). Prior to the enactment of Section 22.018, the Texas Supreme Court held that "[t]he interest referred to must be a pecuniary one . . . . An interest resting on . . . any other basis other than gain or loss of money or its equivalent[] is insufficient." *Logan v. Thomason*, 202 S.W.2d 212, 215 (Tex. 1947). The Texas Supreme Court recently reaffirmed the *Logan* requirement in *Ferreira v. Butler*:

> The statutory definition of *interested person* includes anyone "having a property right in or claim against an estate". We have reframed this standing test broadly as whether "the proponent[] possesse[s] a pecuniary interest to be benefited and affected by the probate of the will and one which would . . . be[] materially impaired in the absence of its probate."

*Ferreira v. Butler*, 575 S.W.3d 331, 334–35 (Tex. 2019) (alterations in original) (footnote omitted) (first quoting Section 22.018(1); then quoting *Logan*, 202 S.W.2d at 216). However, since the enactment of Section 22.018, Texas courts have differed in their analysis of whether a claimant who falls under the statutory categories of "devisee, heir, spouse, or creditor" must also have a pecuniary interest in order to have standing.

A few courts have held that the plain language of Section 22.018 is that an heir, devisee, spouse, or creditor does not need to also have a pecuniary interest to have standing. *See Estate of Daniels*, 575 S.W.3d 841, 845–46 & n.6 (Tex. App.—Texarkana 2019, pet. denied) (noting that the disjunctive use of "or" in Section 22.018 means that a claimant need not both (1) be a spouse, devisee, or heir and (2) have a pecuniary interest in the estate); *Aguirre v. Bosquez*, No. 04-06-00068-CV, 2006 WL 2871339, at *3 (Tex. App.—San Antonio Oct. 11, 2006, no pet.) (mem. op.) (holding that a surviving spouse who was disinherited under

decedent's will did not need a pecuniary interest in the estate to have standing to demand accounting).

Other courts have held that a spouse, devisee, or heir who no longer has a pecuniary interest in the estate has no standing in further probate proceedings. *See Wassmer v. Hopper*, 463 S.W.3d 513, 524 (Tex. App.—El Paso 2014, no pet.) (holding that heirs lacked standing after conveying their interest in decedent's estate to a third party); *In re Litoff*, No. 05-13-00556-CV, 2014 WL 1690746, at *3 (Tex. App.—Dallas Apr. 29, 2014, no pet.) (mem. op.) (holding that once a party relinquishes his interest in the estate, he becomes a "stranger to the estate" and no longer has standing); *In re Estate of Velasco*, 214 S.W.3d 213, 216 (Tex. App.— El Paso 2007, no pet.) (holding that where a brother and otherwise heir of an intestate decedent transferred his interest in the estate to a third party, the brother was not an interested person and therefore did not have standing to challenge an administration proceeding).

Because of the settlement agreement and release, the instant case more closely resembles cases such as *Velasco*, *Litoff*, and *Wassmer* and is distinguishable from cases such as *Daniels* and *Aguirre*. In *Daniels*, the court distinguished its own case from *Velasco* as follows:

> In the case of *In re Estate of Velasco*, . . . the court of appeals held that [the appellant] lacked standing to pursue the appeal because, while both administrations were still pending, [the appellant] had conveyed all of his "right, title, and interest as an heir, devisee or beneficiary and sibling of [decedent]" to [the appellee].
>
> . . . .
>
> By contrast, the Heirs in this case did not convey away their rights as heirs, as the Velasco heirs did, but instead exercised their rights as heirs by receiving the estate property to which they were entitled.

*Estate of Daniels*, 575 S.W.3d at 847 (citations omitted).

Like in *Velasco*, *Litoff*, and *Wassmer*, the instant case involves a claimant who voluntarily released her rights to the estate. Harper lost standing by clearly and unambiguously agreeing to release any right or interest she had or may have had to the decedent's estate. Accordingly, she no longer constituted an interested person under the Estates Code. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

December 31, 2020

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.